May it please the Court, my name is Holly Cooper and I represent the petitioner, Marco Robles-Urrea. Your Honors, in the B.I.'s first decision in this case, it failed to recognize 40 years of binding precedent, from 1966, holding that misprisonment of a felony is not a crime involving moral turpitude. Therefore, petitioner filed a motion to reconsider with the agency, asking for it to apply its own binding precedent to his case. Rather, however, than apply this binding precedent to their case, they granted the motion to reconsideration in part, and overturned 40 years of binding precedent. And in so doing, they've unsettled the reliance interests of hundreds of immigrant criminal defendants. Please. The questions before this Court today are, one, whether this Court should afford Chevron deference to this agency's decision. And two. What would be a reliance interest of criminal defendants? For example, in the Supreme Court case of INS v. St. Cyr, the Supreme Court has told us that immigrant criminal defendants are acutely aware of the immigration consequences of their plea. And therefore, they have a reliance interest in having a settled expectation. Will this plea or will this plea not affect my immigration status in the United States? And that would be the reliance interest, Your Honor. Thank you. And if this Court does find that Chevron deference applies, whether this agency's decision was reasonable. This Court should not afford Chevron deference for two reasons. The first reason is that the B.I. in the published decision of Robles did not invoke its interpretive authority. And second, because in the categorical approach, we are required to at all times interpret the element of misprision of a felony, a federal criminal statute, which is beyond the domain of the agency. First, in the very recent Supreme Court case of Negussie v. Holder, in that case the agency relied on a Supreme Court precedent incorrectly in Forterenco in deciding whether or not the persecutor bar included involuntary acts of persecution. The United States Supreme Court held that it should not afford Chevron deference to this agency's interpretation of the persecutor bar because, one, it had not invoked its own interpretive authority, rather felt it was controlled by the Supreme Court precedent, and two, because the agency had misinterpreted the United States Supreme Court precedent. Here, similarly, in the published decision of Robles-Orea, the Board did not invoke its interpretive authority. Rather, if you read the Board's decision, it is relying upon an interpretation of judicial precedent to change the weather veins of morality. It cites both Itani and this Court's first decision in Navarro-Lopez 1, which has subsequently now been superseded. And in relying on these cases, it didn't explicitly state it was controlled, but it was definitely influenced and persuaded by the changing moral compass of the circuit courts. Moreover, it incorrectly reasoned the Itani case. While Itani primarily found that misprision of a felony fell into the fraud genre, the Board was not true to this holding in Robles-Orea and found that misprision of a felony fell into the depraved genre of crimes involving moral turpitude. Moreover, it correctly stated Navarro-Lopez's 1, but, however, this case has now been superseded. And if we are, in fact, to give credence to the Board's methodology in looking to this Court in part as the weather vein or the moral compass for what is a crime involving moral turpitude, then we must now heed the fact that this case has been superseded by an en banc decision, finding California Penal Code Section 32, accessory after the fact, is not a crime involving moral turpitude because it lacks a depraved element and, therefore, is not categorically a crime involving moral turpitude. Second, the petitioner would contend that there is no Chevron deference should be afforded because, essentially, in this categorical approach, we are comparing the generic definition of what is a crime involving moral turpitude, whether a crime is depraved and violates society's morals, with the elements of the federal criminal statute of misprision. And at all times, under this categorical approach, we are required to state whether misprision has an element of depravity. And in so doing, that should be the province of the criminal courts and the judicial courts, and we should not be divested of de novo review under Chevron. Moreover, if this Court decides that it will defer to the case to the agency and afford Chevron deference to the interpretation, there are several reasons why this Court should not. And the first reason is because it fails to account for the significant reliance interests that have been upset by this case. In both the recent Supreme Court case of FCC v. Fox, as well as a predecessor case of Smiley v. Citibank, the Supreme Court in both of those cases told us that an agency must provide a detailed explanation when it disrupts reliance interests and ignoring reliance interests can be evidence of an arbitrary and capricious decision. Here, criminal defendants have been relying on misprision of a felony as a safe plea for 40 years, relying on Sloan as being binding precedent. Mr. Robles pled guilty on March 2, 2003, to misprison, when BIA precedent held that misprison was not a crime involving moral turpitude. The Supreme Court has found that little doubt exists that immigrant defendants are acutely aware of these consequences and failure to account for them should and would disrupt reliance interests. Thus, the elementary considerations of fairness should dictate that settled expectations should not be lightly disrupted. And here, because we do have a disruption of reliance interests, then we must, under these Supreme Court cases, consider whether the agency has taken into account this reliance interest and has given us a detailed explanation. Are you, in essence, making a retroactivity argument with respect to the BIA? He does have a retroactivity argument. But as well, it's also in the Isn't the argument you're making now essentially similar? Yes, Your Honor. Yes, Your Honor. It pertains under the reasonableness standard of Chevron, as well as to a separate claim that the Robles decision itself should not be applied retroactively to him. But it also has applicability under the Chevron deference to determine whether the agency's decision was reasonable. Thank you, Your Honor. Moreover, a second consideration would be whether statutory language is rendered nuggatory. And in essence, as this Court has recognized in the Navarro-Lopez decision, both Judge Pregerson and Reinhart found that the Itani's construction of what is a crime involving moral turpitude essentially rendered nuggatory the language involving moral turpitude. And we were left with an equation that said any breach of civic duty would be a crime involving moral turpitude. Thus, it renders part of the statutory language nuggatory. And the courts haven't actually invoked this maxim where a statutory language is rendered nuggatory as a basis for rejecting an agency's interpretation as reasonable. Thus, because the board in this decision relies heavily on the formula provided by Itani, if this Court were to give credence to this and deference to this, we would essentially be rendering almost any crime or criminal act a crime involving moral turpitude. Moreover, as Judge Pregerson noted, it would violate another statutory maxim to render the other removability provisions surplusage. In other words, we don't need to have other provisions to render someone deportable for a drug conviction because we have the all-encompassing crime involving moral turpitude provision, which would equate to almost any violation of your civic duty. Moreover, it's unreasonable because it relies on a faulty legal premise. As I previously stated, it is not true to the original holding of Itani, and Navarro 1 has been superseded by this Court's decision in the en banc decision of Navarro Lopez. Moreover, this Court has already had a reasoned decision that a similar statute does not involve moral turpitude. This Court in an en banc decision of Navarro Lopez held that California accessory after the fact was not a crime involving moral turpitude. And there, the elements, while similar, do have an additional component to them. Accessory after the fact is knowing a felony has been committed, harboring, concealing, or aiding the principal with the intent that the principal avoid or escape from arrest or prosecution, whereas misprison is merely knowledge a felony has been committed, concealing, and not making known to the government in a timely fashion. There's no intent, unlike accessory after the fact, there's no intent to benefit the principal offender. In fact, most courts have severed misprison from the underlying crime. Moreover, however, similar to accessory after the fact, concealing has been held by this Court to include harboring. And as this Court stated in Navarro Lopez, the simple act of harboring one's family member cannot be reasonably considered to involve moral turpitude. And this Court's Ninth Circuit precedent is still relevant. There is a question the government has cast upon what the relevance of Ninth Circuit precedent under Chevron. However, if we are to say that the agency is invoking their interpretive authority, and if you find that they are saying as part of our interpretive authority, we are going to consider circuit case law in how they view what is a crime involving moral turpitude, if that is the case, then what we can do here, we can do that here as well. If they are finding depravity and part turns on the circuit court's view and their moral – how the moral compass is turning, then Navarro Lopez's Ellenbach decision is relevant according to the BIA's own methodology in Robles. Do you have any view of Nijewan? Nijewan? Yes. I don't know whether we should await the – it's going to be decided, I assume, by the Supreme Court within the next 60 days or so. Could that affect this case? Your Honor, I read the transcript in Nijewan, and there the issue, as this Court is aware, is whether – which would impact this Court's decision in Kawashima, which is where there is an extra element in the immigrant ground of removability, like $10,000 loss to the victim. And here there is not that extra element where courts need to explore whether that extra element is, in fact, part of the criminal statute. Because it's found involving a $10,000 loss to the victim, the government may contend that the involving moral turpitude is sort of the extra element. However, most courts have found, or at least this Court has found, a generic definition for that, and the question is really whether depravity is an element of the criminal statute, whereas whether this – you know, of course, depravity is never going to be an explicit element in any criminal statute. Therefore, I think the issues are distinct, and I think that this Court need not hold this case in abeyance for pending the outcome of Nijewan. Okay. If we were to agree that categorically misprison of a felony is not a crime of moral turpitude, then what is your position as to what we should do? Should we remand to – I'm not quite clear as to whether we should remand to determine whether under some other approach it is or whether you think that we can decide the whole issue. Great, Your Honor. That's an excellent question. The government's contention has been that if he succeeds in proving this is not categorically a crime involving moral turpitude, then we should remand to apply the new methodology of the Attorney General's decision in Silva-Trevino. And Petitioner would contend that we need not, because in this area, Silva-Trevino is actually consistent. The step one of Silva-Trevino is to apply the traditional categorical approach. It has not disrupted the categorical approach. It's only disrupted when you apply the modified categorical approach. Therefore, there would be a futility in remanding for Silva-Trevino because it has done nothing to disrupt this time-honored approach of doing the categorical matching of the crime with the generic definition. Moreover, it's Petitioner's contention that even if this Court were to find that there is a modified categorical necessity, that the Attorney General does not have the authority to issue that decision because the Attorney General has delegated responsibility for making final decisions to the Board of Immigration Appeals. Under 8 U.S.C. 1101-847, it has essentially delegated the responsibility of all of them. But it can overrule the Board. The Attorney General can overrule the Board. The procedure by which it can certify cases to itself was a regulation that predates AEDPA. And unfortunately, they're still doing it. But the question is whether it's an ultra-virus act of the Attorney General to certify cases. I think we can spend the next two years on this case. I think we want to go there. Okay. Also, there's the question of whether it would be futile to remand for Silva-Trevino because Silva-Trevino under Montgomery Ward should not be applied retroactively. And this Court has adopted that Montgomery Ward standard in Diego Miguel Miguel. Your Honor, if I may. You may reserve the rest of your time. Thank you. Can you simplify this problem? Your Honor, I hope to try to. Ultimately, this case boils down to a single question, and that is whether or not the Board's interpretation of the conduct involved in misprision of a felony is a reasonable assessment of the character, gravity, and moral significance in making misprision of a felony a crime involving moral virtue. But you're talking about applying the categorical approach. Yes, Your Honor. Here, this case and the analysis that is applicable is controlled by the Court's recent decision in Marmoleo Campos. There, the Court determined that the ultimate determination of whether or not a petitioner has committed a crime involving moral turpitude is dictated by two separate inquiries, which are governed by two different standards of review. Here, there's no dispute with regard to the first inquiry. The conviction of misprision of a felony under 18 U.S.C. Section 4 requires affirmative concealment of a known felony. The pertinent issue, therefore, is whether the Board reasonably assessed the conduct in classifying it as a crime involving moral turpitude. Here, it did so. The petitioner has raised a number of points which I wish to respond to. In terms of the Board's analysis and its decision, first of all, in relation to Navarro-Lopez, on which petitioner relies heavily, the decision in Marmoleo Campos and, as this Court has recognized, the Supreme Court's decision in Brand X trumps the analysis that the Court may have made that could be viewed as being contrary precedent. Moreover, that case is also distinguishable. The other issue concerning the impact of Negussi and the FCC arguments, those overlook the point that was emphasized in the published decision. Here, the Board was determining and it had the discretion to reconsider its prior case law to decide the presidential authority of the case that was reversed in part by the Attorney General. If we look to page 4 of the Board's decision, it states that we have never addressed the question whether holding in a decision that was reversed by the Attorney General on another ground survives as President. Indeed, the case law here, as well as other case law, suggests that there was some had made in Sloan. At page 39 of the record, in the Board's previous decision below, it stated that the Attorney General did not address the question of whether misprision of a felony was also a crime involving moral turpitude. The issue, therefore, remains unresolved in a published Board decision, and that was in relation to the significance of Sloan. In Smalley v. Ashcroft, a Fifth Circuit decision, the Court there noted in a footnote that the Attorney General's reversal in Sloan extinguished presidential value of Sloan regarding misprision of a felony. There's also an unpublished Board precedent that suggests that there was confusion as to the significance of the Attorney General's decision in Sloan. And it was within the Board's discretion to make a determination in the first instance such that there was no change in policy. Even if there was a change in policy as far as the construction of misprision of a felony, the Board was entitled to do so more so because this is a crime involving moral turpitude. And this Court, as well as several other courts, have acknowledged that moral turpitude is premised on the prevailing views of society such that it is subject to change. And after 40 years, the Board here stated that looking at all the case law that had arisen subsequent to matter of Sloan, that it was warranted in determining that misprision of a felony is a crime involving moral turpitude. Is it the government's position that every felony is a crime involving moral turpitude? No, Your Honor. I'd like to find one that isn't. In terms of the ---- Can you give Judge Pollack a couple of examples of things the government doesn't believe is a crime of moral turpitude? Your Honor, it depends upon the circumstances. At this point, I would have to look into it further as far as what is a felony. I am prepared to address the issues related to this case. Well, if we ---- Oh, I'm sorry. If you ---- If we assume that there is a category, however small, of felonies that are not crimes of moral turpitude, is there any irrationality about then determining that affirmative concealment of such a non-immoral felony is itself a crime involving moral turpitude? Your Honor ---- I'm positing for you that the crime which our putative defendant is charged with concealing is a crime which is not a crime involving moral turpitude. And then I'm asking you what sense it makes to say that a person who affirmatively conceals the commission of such a crime, which by definition does not involve moral turpitude, has done an act which does involve moral turpitude. Your Honor, I have two responses to that. For one, this case, because it's based on a categorical analysis, then the court doesn't look to the underlying offense. And that would also be inappropriate under the Taylor approach because we can't look to look behind the actual statute. It would be an imprecise ---- I'm asking you a question of what sense does it make if the crime you're concealing is not a crime of moral turpitude, what sense is it, Judge Pollack said, to say that doing something less, concealing that crime, which is not a crime of moral turpitude, that the act of concealing it is a crime of moral turpitude? Your Honor, because in looking at this offense, it's based on the conduct. And the conduct here was affirmative concealment of a known felony. In that regard, it is reasonable for the board to determine that it involves some sort of depraved intent. Well, is the felony ---- you're not arguing that all felonies are crimes of moral turpitude? No, Your Honor. Not necessarily. It depends upon the conduct that is involved because the analysis requires consideration of the actual conduct. But you can't give us an example of a felony that would not be a crime of moral turpitude in the government's ---- in the categorical approach in the government's view? Your Honor, well, the board has determined that when it comes to certain offenses in prior precedent, at least with regard to misprision of a felony, it had stated that we can't take a look at the underlying offense because that, in the context of certain offenses, it wouldn't be. So concealing a crime that is not a crime of moral turpitude, concealing it is a crime of moral turpitude. Your Honor, the actual felony itself may or may not be depending upon the context. But that fact is irrelevant in the government's view. Is that what you're saying? Your Honor, based on a categorical view, it has to be. However, the court ---- So the misprison of that, the concealment of that crime that's not a crime of moral turpitude is automatically, categorically a crime of moral turpitude? Your Honor, it depends upon the scenario. Here that doesn't apply because the court has already determined in Barragán-López that solicitation of possession of an illegal drug would constitute a crime involving moral turpitude based on the underlying offense. That is ---- So it's a drug offense. Yes, Your Honor, because it is. And in this case, this does involve a drug trafficking offense. In fact, the records suggest that Petitioner had pled down in order to avoid a more severe punishment. But that's not the theory. The theory is that it doesn't matter. Yes, Your Honor. It's a crime of we don't look to see what the underlying offense is. No, Your Honor. Here, in order to make an assessment, the board can only look at the requirements for a conviction. And the requirement for misprisoning of a felony focuses on the affirmative concealment of a known felony. The board is within its discretion and its interpretation is reasonable. The question here is whether or not that's reasonable. And looking at the different case law, as well as consideration of the prevailing negative views of concealment of a crime, the board's decision is reasonable. It's incumbent upon the board. Why is it reasonable? It's reasonable to say that it's more morally offensive to conceal a crime than to commit the crime. That's not what we're necessarily ---- So committing the crime is not morally offensive. In this case, it is. I'm talking about this case in a categorical approach. Your Honor, I ---- In a categorical approach, you don't care whether the crime is not morally offensive. The underlying offense. Yes. Then ---- That is not morally offensive. Let's assume it's one of those, if you could ever find one. But ---- But, Your Honor, that's the point. I don't ---- I don't know. What's the point? That it's worse to conceal a crime than to commit it? That it's morally offensive to conceal a crime even when it's not morally offensive to commit the crime? Your Honor, with all due respect, that's not the issue here. The question is going to be ---- Well, you know, that's what ---- something about oral argument that lawyers don't always follow. Yes, Your Honor. We try to find a principle, and that's what we ask a hypothetical question, and see where your answer leads us or the position. The position of the government is that it doesn't matter. That's why it's categorical. Because, as you said, it's categorical is your position. Therefore, even if it's a crime that is not morally offensive, if you conceal it, it is morally offensive. Your Honor, then that would go to the fact that the government can't posture and there hasn't been any example of a case involving a felony which did not involve moral turpitude. Well, I'm afraid we're coming to that position. But you offered ---- you told us there was such a category, but you didn't have examples of it. Your Honor. So we've been pursuing what the implications of that acknowledgment are. It's because the government's position is that the focus is on what the board's interpretation was. And the board here looked only at the conduct. And in order to make that assessment, then the court can only look to ---- Which conduct? The conduct of the misprison? The conduct of affirmative concealment of a known felony. Just ---- okay. Regardless of ---- We're trying to see is that a reasonable judgment for the government to make. Yes, Your Honor. It is reasonable when, given the different views that have found that misprison of a felony is a crime involving moral turpitude. And that's why it's ---- And that's more of a moral offense to conceal it, even if it's a crime that is not morally offensive. Your Honor, the board did not say that here, but that ---- Well, it did when it adopted the categorical approach. Your Honor, then that would have to go ---- that goes to the Duenas-Alvarez point by the Supreme Court, that there has to be a reasonable probability and not just ---- And you mean there's no reasonable probability that the government could ever find an offense that isn't moral turpitude? Your Honor, here there's nothing to suggest that there is not an offense that would not be a moral turpitudinous offense here. And what the Court stated in Marmoleo's campus and the import of the other decisions that have determined that concealment of a felony is morally turpitudinous is because reasonable minds may differ. And this Court has acknowledged that when that is the case and when the question is the board's reasonable interpretation, deference is entitled to the board. Well, let me give you an example of someone who is in someone's house and it's a friend's house and the visitor is going to go to a party that night and says, oh, wouldn't it be nice if I could borrow my ---- if I could take my friend's brooch, but she may not like it. So she goes in and takes the emerald necklace or whatever, takes it out of the house, wears it for the evening and takes it back. They committed a crime, but it may not be a crime of moral turpitude. Now, if someone knows that the friend did that and doesn't tell the owner of the necklace, it's committed a crime of moral turpitude. Right. Your Honor, there's two points in terms of it. For one, there has to be a felony. And two, in terms of such an offense ---- So taking a diamond necklace is not a felony? If it is a felony where there was the requisite deprivation and all the requirements of the criminal statute are met ---- Well, let's just ---- The sentencing also is consistent with it. Moreover, there's also a petty offense exception for crimes involving moral turpitude such that in order to make that assessment, then there would be a consideration as to whether or not this was some sort of de minimis. You know, we could get to the modified categorical approach for offenses that really are the kinds of offenses you're concerned about. But the issue here is you're arguing that you don't get to a modified categorical approach. That the categorical approach is a reasonable one. For example, when parents harbor a child who may have committed a felony, that's concealment. That's a misprision of felony. Or anybody who helps feeds a felon or feeds somebody who has they know has committed a crime. But it doesn't matter whether the crime is morally offensive under a categorical approach. Your Honor, it does. The categorical approach requires not only that there be a conduct that's a crime, it also requires here, as the Board described here, that there was a depraved intent. In your Honor's example of harboring a child, there's a conflict between the duties that the parent, that the individual has as far as not concealing a crime, but also there is a concern as far as the parental duty to protect the child. In that regard, there's a public policy issue on the conflicting concerns. I don't think we're simplifying things. Do you have any view on whether we should wait for Nijiwan? Your Honor, Nijiwan, as Petitioner has indicated, does rest on issues that are not relevant to this case with regard to a separate element of the offense. Here, there is a categorical analysis. Therefore, it's not applicable. You don't think the Supreme Court selected to straighten out the Navarro-Lopez issue, which bothers the government so greatly? Your Honor, well, the Supreme Court and this Court has already determined, based on the Board's published decision here in Robles-Urrea, that in light of the new published precedent, the Court's decision in Navarro-Lopez is no longer dispositive, even if it were applicable. So, therefore — But we have determined that? Your Honor, because in — yes, Your Honor. In Gonzales and in other cases in which the Court has recognized the Supreme Court's decision in Brand X, which indicates that when the decision is premised on an ambiguity in the statute, then the Board's decision must trump any contrary precedent. Here, that is the case. And Marmoleo-Campos requires that the Court only consider the Board's — the reasonableness of the Board's decision. Thank you. Thank you. Thank you, Your Honors. In rebuttal, Petitioner would like to say that the Board itself has recognized that Sloan, the case from 1966, was in fact binding precedent until it overruled in 2006. Second, the government's argument is inimical to its — to the BIA's own rationale. If, in fact, we are going to give deference to the Board of Immigration Appeals' decision in Robles-Urrea, then we must — then what they essentially did there is said the winds of what is morality have changed. And they relied, in large part, on Navarro-Lopez I. If, in fact, they are looking to this Court as a weather vane to determine morality, then we must now give credence to the fact that that case has been superseded. And if — It's been reversed. Right. It's reversed by the Ambaug decision. Moreover, there's an ultimate philosophical question that's presented here, and that is, what is morality? And it is a mistake to equate civil virtue with moral virtue. For the famous legal philosopher Ronald Dworkin, he found that for most people, associative responsibilities to family and coworkers are the most important obligation of all. And civil duty is only one dimension of moral topography. The BIA construes a crime involving moral turpitude to be moral error. But when a person is subjected to conflicting moral obligations, one, to obey the law, or whether to help conceal their family member, they may make the wrong moral choice. But it is not a depraved moral choice. Thus, someone who honors a self-perceived associative obligation to family over a State-enforced associative obligation to obey the law has not demonstrated moral turpitude. Thank you, Your Honor. Thank you. The matter just argued is submitted for decision. Before hearing the last cases, the Court will take an approximately 10-minute recess. All rise.
judges: Schroeder, Reinhardt, Pollak